EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JULIO JUARBE, acusado y apelante.

No. 4566.—*Sometido:* Abril 21, 1932. *Resuelto:* Mayo 9, 1932.

*J. Valldejuli*, abogado del apelante; *E. Díaz Viera, Fiscal Auxiliar*, abogado de *El Pueblo*, apelado.

El Juez Asociado Señor Córdova Dávila, emitió la opinión del tribunal.

En este caso se presentó contra el acusado la siguiente acusación:

"El fiscal formula acusación contra Julio Juarbe, por un delito de Escalamiento en Primer Grado (felony) cometido de la manera siguiente: El referido acusado Julio Juarbe, allá por el día 30 de agosto de 1930, y en San Juan, P. R., que forma parte del distrito judicial del mismo nombre, ilegal, voluntaria y maliciosamente, penetró, en horas de la noche, en el establecimiento dedicado a cafetín, perteneciente a y de la propiedad de Vicente Dumont, con la intención entonces y allí de cometer hurto.

Visto el caso por todos sus trámites ante un jurado en la Corte de Distrito de San Juan, el acusado fué declarado culpable por el jurado y condenado por la corte a un año de presidio con trabajos forzados.

No conforme el acusado con dicha sentencia, apeló de la misma para ante este tribunal, habiendo radicado su alegato en el que imputa a la corte inferior la comisión de los siguientes errores:

"PRIMERO:—Que la Corte inferior cometió error al permitir que declararan los testigos de El Pueblo de Puerto Rico, nombrados Sixto M. Saldaña y Andrés A. Lugo.

"SEGUNDO:—Haber declarado sin lugar la Corte inferior la moción para que se instruyera al Jurado que trajera un veredicto absolutorio por no ser suficiente la prueba en este caso para soportar un veredicto condenatorio y no haberse establecido prima facie el delito imputado al acusado.

"TERCERO:—Que el veredicto en este caso es contrario a la ley y a la evidencia desleída en este caso."

Examinemos el primer error. El fiscal presentó como prueba las declaraciones de Sixto M. Saldaña y Andrés Lugo. El acusado por conducto de su abogado, se opuso a la admisión de esta prueba, alegando que la misma se presentaba para probar que el acusado ha cumplido otras condenas por otros delitos, y que no se habían establecido los requisitos de ley para que los testigos pudieran declarar. Alegó también que no se conectó en forma alguna con prueba hábil que el acusado haya realizado el delito de que se le acusa. La corte admitió la prueba.

El testigo Saldaña declaró que es jefe del presidio; que tiene en sus manos el expediente histórico penal de Julio Liceaga; que el individuo que lleva este nombre es el mismo acusado en el presente caso. Se presentó como prueba el expediente histórico penal, siendo admitido por la corte con la oposición del abogado del acusado. La misma oposición se hizo al testigo Andrés Lugo, quien prácticamente prestó la misma declaración que el testigo Saldaña.

La admisión de evidencia que tienda a demostrar o que demuestre que el acusado ha cometido otro delito completamente independiente del delito de que se le acusa ha sido ampliamente discutida por las cortes de justicia. La regla general es que esta evidencia es inadmisible.

La natural e inevitable tendencia de los jueces, y sobre todo de los jurados, es darle excesivo peso a esta clase de prueba que muchas veces puede conducir a un veredicto con-

denatorio irrespectivamente de la culpabilidad o inocencia del acusado del delito que se le imputa. El indudable valor probatorio de esta clase de evidencia ha hecho imperiosa y necesaria la regla de su exclusión para evitar el peligro de una declaración de culpabilidad cuando la evidencia presentada resulta insuficiente para probar el delito imputado al acusado. De manera que esta evidencia, en principios generales, se declara inadmisible, no porque carezca, sino más bien porque tiene demasiado valor probatorio. Dice John Norton Pomeroy, arguyendo en el caso de *People* v. *Stout,* 4 Park Cr. 97:

"En la administración de la jurisprudencia criminal, el derecho civil permite y requiere tal evidencia. Este derecho investiga la reputación anterior, disposición, hábitos, asociados, negocios; en una palabra, la completa historia de una persona acusada, para descubrir si es probable que haya cometido el crimen de que se le acusa. La ley criminal americana e inglesa, en su administración práctica, se limita a la investigación del verdadero crimen imputado y reduce la evidencia judicial a circunstancias directamente conectadas con el cargo imputado y necesarias para elucidarlo. Estos dos sistemas son diametralmente opuestos el uno del otro, e irrespectivamente de lo que pueda decirse acerca de sus méritos comparativos, la regla de la ley común está firmemente establecida y constituye la base fundamental del procedimiento criminal como un elemento inseparable del juicio por jurado. Las mentes de experiencia judicial pueden eliminar de una masa de hechos impertinentes e incriminatorios, aquellos que directamente tiendan a probar el crimen imputado al prisionero, pero el verdadero carácter de los jurados, y la teoría del juicio por jurado, requiere que toda evidencia que predisponga al prejuicio y tienda a originar en la mente del jurado una antipatía al prisionero, y que no tienda directamente a probar el cargo imputado, debe ser cuidadosamente excluída."

En el caso de *State* v. *Saunders,* 12 Pac. 445, dice la Corte Suprema de Oregon por conducto del Juez Thayer, lo siguiente:

"Colocad a una persona en un juicio criminal, y permitid al representante del estado demostrar que el acusado ha estado anterior-

mente implicado en asuntos similares, y cualquiera que sea la explicación que de los mismos se haga, esta evidencia será más perjudicial al acusado y conducirá más a su convicción que testimonio directo de su culpabilidad en el cargo imputado. Todo abogado que haya tenido experiencia particular en juicios criminales sabe esto, sabe que los jurados se sienten inclinados a actuar por impulso y a condenar a las partes acusadas basados en principios generales. Un jurado ordinario no es susceptible de preocuparse mucho acerca de la inocencia o culpabilidad en un caso praticular si piensa que el acusado es un granuja o un vagabundo. Así es la naturaleza humana.''

Ahora bien, esta regla tiene sus excepciones, pero los tribunales deben ejercer mucho cuidado al admitir evidencia de esta naturaleza, para que los derechos del acusado, así como los del pueblo, queden verdaderamente protegidos.

''Se ha dicho por algunos,'' apunta Wigmore en la página 409 del tomo primero de su obra sobre EVIDENCIA, ''que el objeto de esta regla es mostrar misericordia al culpable, dándole la oportunidad de defenderse, obstaculizando artificialmente la prosecución (*prosecution*). Por el contrario, el objeto es evitar que una persona no culpable sea impropiamente condenada.'' A esto hay que añadir el principio de que toda persona es inocente mientras no haya sido declarada culpable por un tribunal competente. Esta presunción de inocencia debe acompañar al acusado hasta el momento en que sea declarado culpable y no parece justo que se admita prueba de sus antecedentes penales, a menos que se trate de un caso excepcional comprendido dentro de las excepciones a la regla general. Es preferible la absolución de un culpable a la condena de un inocente, aunque se trate de una persona que haya cometido otros delitos de la misma naturaleza del crimen que se le imputa. La ley no establece distinciones entre buenos y malos. La presunción de inocencia cobija a unos y a otros, y cuando un acusado es llevado ante un tribunal, cualquiera que sea su reputación anterior, tiene derecho a ser juzgado con la debida imparcialidad.

Establecidos estos principios, tócanos ahora decidir si la

admisión de la prueba de los antecedentes penales del acusado está comprendida dentro de las excepciones a la regla general. Prueba de un delito independiente del que es objeto de la acusación puede presentarse en casos excepcionales para probar conocimiento, intención, designio o plan. El procedimiento para la admisión de la prueba de otros delitos en los casos comprendidos dentro de las excepciones a la regla general no es siempre el mismo. Refiriéndose a la evidencia de intención, dice Wigmore en la página 615, tomo primero de su obra sobre EVIDENCIA, "que el aspecto peculiar de este proceso de prueba es que el acto mismo se presume realizado, ya porque como usualmente ocurre, este acto es concedido, o porque se instruya al jurado no considerar la evidencia desde este punto de vista mientras no considere que el acto ha sido probado y se disponga a determinar la intención."

El mismo autor dice en la página 609 de la citada obra:

". . . La peculiaridad de la intención, como un *factum probandum,* es que un acto se presume realizado por el acusado, y la cuestión a resolver es el estado mental que lo acompañó. Sin embargo, el designio o plan no forma parte de la contienda, como elemento del hecho criminal imputado, sino el estado mental anterior que como evidencia tiende hacia la realización de un acto ideado o planeado (ante, Párrs. 237, 242). De forma que la peculiaridad del designio es que el acto no se presume probado y se usa el designio como evidencia para demostrar la probable comisión del delito. Es obvio que hay envuelto algo más definido y positivo que en el caso de la intención. Al probar la intención se admite o se presume el acto; lo que se trata de averiguar es el estado mental que acompañó a éste. Al probar el designio, el acto aun permanece indeterminado y la prueba requerida trata del funcionamiento de un plan, que tiende hacia el futuro con tal fuerza que hace probable tanto el acto como el estado mental que lo acompañó. La intención es un mero apéndice del acto; el designio es una fuerza que como resultado produce el acto."

Aunque el hecho de penetrar en una casa con el propósito de cometer hurto implica un designio o plan, sin embargo la historia penal del acusado, que data desde el 13 de enero

de 1906, se admitió única y exclusivamente para adicionar a la evidencia aportada el complemento de la intención.

En la hoja de los antecedentes penales del acusado admitida por la corte, aparecen algunas sentencias condenando al acusado por varios delitos de falsificación, escalamiento y hurto menor. No se establece conexión alguna entre estos delitos y el delito objeto de la presente acusación.

Sobre el alcance de esta prueba la corte sometió al jurado la siguiente instrucción:

"En este caso ha ofrecido el fiscal dos expedientes o antecedentes penales del acusado.

"Claro es que el fiscal no ha hecho este ofrecimiento para demostrar que este hombre es culpable del delito de que se le acusa ahora, porque la Corte no lo hubiera admitido, y ese no es el alcance que el jurado debe dar a esta clase de prueba. De modo que la mera prueba de actos delictivos cometidos con anterioridad por el acusado no tiende a demostrar la existencia de un acto posterior. El que un hombre haya sido malo en su vida no quiere decir que continúe siendo malo toda la vida. El elemento de la convicción en casos anteriores simplemente trata de establecer ante Uds. la intención del acusado, si es que Uds. consideran razonable la evidencia circunstancial presentada a Uds. Los delitos anteriores cometidos por el acusado no serían bastantes para sostener la convicción de que hubiera cometido el acusado el delito de que ahora le acusa el Fiscal."

Las instrucciones de la corte al jurado demuestran claramente que la evidencia se ofreció con el propósito de probar la intención, y aunque no hubiese sido presentada con este propósito, la corte así lo expresó en su instrucción.

Descartando esta prueba de los antecedentes penales, la prueba presentada por el fiscal se reduce a las declaraciones de Vicente Dumont y Augusto Beauchamp.

Vicente Dumont declara que vive en Santurce, calle de Blanca Cerra; que tiene en su residencia un establecimiento, un cafetín, llamado "La Campana"; que estaba durmiendo y al notar ruido llamó a su empleado, Augusto Beauchamp, y que una voz le respondió: "Yo mismo soy Augusto"; que

volvió a llamar a Augusto diciéndole: "Levántate que hay una persona dentro, debe ser un pillo"; que se levantó, salió a la puerta y vió al acusado parado en medio de la acera; que dijo a Beauchamp que llamara a un policía; que el policía llegó y que el acusado estaba en actitud nerviosa cuando vió a éste; que entonces entraron al establecimiento y estaba la puerta descerrajada y el acusado no quería entrar y el policía lo registró, encontrándole 94¢; que al testigo le habían faltado 94¢ del cajón; que recogió el dinero que había en el cajón esa noche y dejó 94¢, y que no recuerda el diario que hizo ese día; que no le dijo al policía cuánto le faltaba en el cajón, y que cuando lo registraron fué que dijo que faltaban 94¢ que era lo que el acusado tenía en el bolsillo; que el acusado no corrió ni caminó cuando sintió la voz del testigo y estaba allí cuando llegó el policía.

El testigo Augusto Beauchamp declara que como a la 1½ de la noche Dumont oyó un ruido y lo llamó; que salió a la calle y encontró parado a Julio Juarbe, y la puerta descerrajada; que le preguntó al acusado qué hacía allí, respondiéndole que no hacía nada; que le parece que dicho acusado estaba un poco nervioso; que éste trató de andar y el testigo le dijo: "No se vaya hasta que traiga al policía"; que vió que el acusado vaciló, que quiso andar y no pudo; que no lo agarró, y se fué a buscar al policía, quedando el acusado con Vicente Dumont; que el policía registró a Juarbe y le encontró 94¢ y que en el cajón faltaron 94¢; que el testigo fué a buscar al policía que estaba a una corta distancia y que cuando llegó el mencionado policía entraron en la casa, yendo primero el testigo, luego Vicente Dumont, luego el policía y después el acusado; que cuando el policía registró al acusado y le encontró los 94¢, preguntó cuánto dinero había en el cajón y le dijeron que el cajón estaba virado.

El acusado Julio Juarbe declara que estaba jugando dominó en un cafetín y que a las doce de la noche cambiaron las fichas y le dieron un billete de un dólar, que cambió para

comprar 5¢ de cigarrillos y una caja de fósforos; que yendo para su casa se encontró con el testigo Augusto Beauchamp y que, éste le dijo: "Amigo, hágame el favor y espere aquí en lo que voy a buscar un policía que está en la parada"; que después de haberse ido el individuo salieron Vicente Dumont y la señora por una puerta; que el testigo estaba parado en medio de la calle y le dijo a Vicente Dumont que como ellos habían llegado se iba para su casa porque era tarde; que Vicente le dijo que esperara que viniera, y vino ese individuo con el policía, quien preguntó lo que pasaba, contestándosele que habían descerrajado la puerta que estaba cerrada con candado; que entraron todos y registraron, y el policía preguntó: "¿Le falta algo?" y alguien contestó: "No me falta nada porque a mí me escalaron una vez y nosotros no dejamos dinero aquí"; que entonces el policía dijo que no se podía hacer nada; que Vicente le dijo al policía que cuando sintió ruido llamó a Augusto y le contestaron de adentro: "Es Augusto", pero que la voz que le contestó se le pareció a la del acusado; que entonces el policía lo. registró y le encontró 94¢, preguntando: "¿Eso le falta a Ud.?"; que se le contestó: "Sí, señor, eso es, me faltan 94¢ que tenía;" que entonces el policía le preguntó en qué se ocupaba, contestándole el acusado que era aficionado de carpintero y planchador; que se quedó allí en espera de que llegara el policía y que si hubiera cometido un hecho no hubiera esperado que lo fueran a buscar.

Estos son los hechos más salientes de la prueba practicada en este caso. Con esta prueba la corte inferior admitió. los documentos creditivos de los antecedentes penales del acusado. Cuando estos documentos fueron admitidos, se había ofrecido a la corte evidencia circunstancial demostrando que se había sentido un ruido en la casa y que apareció una puerta abierta y descerrajada. Hasta este momento ¿qué prueba se había presentado para demostrar la conexión del acusado con el referido hecho? Unicamente su presencia en la acera de la calle, frente a la puerta de la

casa, a raíz de sentido el ruido dentro de la misma y el hallazgo de los 94¢ en sus bolillos. Sobre este hecho Vicente Dumont declaró que no le dijo al policía que le faltaba dinero en el cajón hasta después que el acusado fué registrado. Los dos testigos de la acusación estuvieron presentes cuando se practicó este registro. Según ellos el policía preguntó cuánto les faltaba, contestando Dumont que 94¢. ¿Conocía Dumont la cantidad encontrada en poder de Juarbe, cuando precisó y mencionó por primera vez el dinero que le faltaba? Aunque la prueba tiende a demostrarlo así, este hecho no aparece claramente establecido. Sobre este extremo existe una laguna en la prueba de la acusación que bien pudo ser llenada por el policía, quien no compareció a declarar y cuya ausencia del juicio no ha sido explicada. La prueba más clara la suministra la declaración del propio acusado no controvertida en este particular. Dice este acusado que al encontrarle el policía los 94¢ preguntó: ¿Eso le falta a Ud.?'', y que se le contestó: ''Sí, señor, me faltan 94¢ que tenía.'' Si Dumont hubiera dicho al policía que le faltaban esos 94¢ antes de practicado el registro, el hallazgo de esta misma cantidad en poder del acusado habría tenido un acentuado valor probatorio; pero la evidencia se debilita hasta el extremo de hacerse sospechosa cuando se fija y precisa la cantidad después de haberse practicado el registro. Nótese, además, que la memoria de Vicente Dumont falla para recordar la cantidad que retiró del cajón como producto de su negocio durante el día, y que sin embargo recuerda la cantidad exacta que dejó en varias monedas en dicho cajón. Aunque no es nuestro ánimo apreciar en estos momentos el peso que pueda tener la evidencia aportada, sin embargo es natural y lógico que examinemos los elementos de prueba que tuvo sometidos a su consideración la corte inferior para llegar a la conclusión de que debían admitirse los documentos ofrecidos por el fiscal. Si al jurado se le hubiese sometido únicamente la prueba testifical, que se limita a las declaraciones de Dumont y Beauchamp, dudamos mucho que se hu-

biese rendido un veredicto de culpabilidad. No es aventurado asumir que la prueba documental influyó en el veredicto del jurado, pero a nosotros nos basta con saber que pudo influir, perjudicando los derechos del acusado. La corte no instruyó al jurado para que descartase la prueba de los antecedentes penales en caso de que hubiese llegado a la conclusión de que el hecho imputado en la acusación no había sido debidamente establecido independientemente de la intención.

No se ha establecido tampoco en este caso conexión alguna entre los delitos cometidos por el acusado y el hecho imputado en la acusación. En algunos casos se ha admitido evidencia de delitos anteriores no conectados con el delito objeto de la acusación. La admisión de esta prueba depende de la naturaleza del caso. Por ejemplo, en el caso de *Trogdon* v. *Commonwealth,* 31 Gratt 862, la corte sostuvo que en acusaciones por emitir pagarés falsificados, circular moneda falsificada y recibir bienes hurtados, es admisible evidencia de otras transacciones de un carácter semejante, aunque constituya testimonio de distintos delitos, con tal de que no sean demasiado remotos. Las limitaciones con respecto a tiempo y circunstancias en tales casos deben ser determinadas por la corte en su discreción. El objeto de esta evidencia es simplemente demostrar *mens rea* de parte del acusado.

En el caso de *Prettyman* v. *U.S.,* 180 Fed 30, la corte se expresó así:

". . . La regla general universalmente establecida es que los actos que no hayan sido imputados en una acusación no pueden ser probados, entre otras razones porque no es pertinente ningún testimonio a menos que esté relacionado con las materias contenidas en la acusación y con respecto a las cuales se establece una controversia por la alegación de no culpable, y porque el acusado, no teniendo conocimiento de que testimonio de cualquier otro acto había de ser producido, no pudo prepararse para rebatirlo. Pero a esta regla general hay por lo menos una excepción importante, y cuando la intención con que ha sido realizado un acto criminal viene a ser importante, como lo es necesariamente en este caso, entonces, dentro

de ciertos límites, prueba de actos similares del acusado es admisible con el fin de demostrar la intención con que se ejecutó el acto imputado en la acusación. Creemos, sin embargo, que tales actos pueden ser probados únicamente cuando fueron suficientemente próximos, en lo que a tiempo se refiere, al acto imputado, de modo que razonablemente arrojen alguna luz sobre el extremo de la intención; cuando el acto similar está tan relacionado en lo que a su clase concierne con el acto imputado, que ilustre la cuestión de intención; cuando los actos similares son en verdad actos de la misma naturaleza general o están íntimamente relacionados con las transacciones de donde surgieron los supuestos actos criminales; y cuando en verdad los actos similares son actos del acusado contra quien se dirige la prueba en cuestión.''

La pauta para la admisión de evidencia de otros delitos es la conexión lógica de estos delitos con el delito imputado en la acusación. *People* v. *Cunningham,* 66 Cal. 668.

En el caso de *Towne* v. *People,* 89 Ill. App. 258, la corte, después de aceptar el hecho de que los tribunales en diferentes jurisdicciones varían en la aplicación de las excepciones a la regla general, se expresó así:

''Sin embargo, todos están substancialmente de acuerdo sobre la proposición de que a menos que exista alguna lógica conexión entre los dos delitos, bien sea por formar parte del *res gestae,* o porque sean parte de un mismo plan, o porque el uno tienda a demostrar *scienter* en el otro, la regla general prevalece y no se aplica la excepción.''

Es abundante la jurisprudencia sobre el principio de que debe establecerse la debida conexión entre el delito imputado y los delitos anteriores que se ofrecen como prueba.

En el caso de *People* v. *Henry,* 88 N.S. Rept. 77, se imputó al acusado un delito de escalamiento. Se presentó evidencia de dos convicciones anteriores por hurto. El acusado fué declarado culpable. La corte revocó la sentencia y ordenó un nuevo juicio. El Juez Grant, quien emitió la opinión de la corte en este caso, se expresó así:

''Esta evidencia fué incompetente. No se estableció conexión alguna entre los dos crímenes anteriores y el delito imputado al acu-

sado. No se ofreció evidencia alguna para demostrar que los hurtos anteriores hubiesen sido cometidos bajo circunstancias similares a las de este caso. Además, los anteriores delitos no fueron cometidos en fecha próxima a la del delito aquí imputado. . . . Este es un caso claro sobre presentación de prueba de un crimen para probar la comisión de otro.''

En el caso de *Commonwealth* v. *Campbell,* 155 Mass. 537, 30 N.E. 72, se prestó una declaración en parte relacionada con el hecho imputado al acusado y en parte imputando a este acusado la comisión de otros delitos. La corte sostuvo que debía admitirse el testimonio en aquella porción conectada con el delito en disputa y rechazarse con respecto a la porción que tendía a demostrar que el acusado era un criminal notorio. *People* v. *Jones,* 31 Cal. 565; *People* v. *MacNutt,* 64 Cal. 116; *State* v. *Johnson,* 38 La. Ann. 686.

Entendemos que la corte inferior cometió error al admitir y someter al jurado los antecedentes penales del acusado.

■ Básase el segundo error en haber declarado la corte sin lugar la moción para que se instruyera al jurado que trajera un veredicto absolutorio. El abogado del acusado adujo como argumento para solicitar esta instrucción que la acusación fijaba la fecha de la comisión del delito en 30 de agosto de 1930, habiéndose demostrado por la prueba que el delito se cometió en la mañana del día 29 de julio de 1930. Entendemos que la corte no incurrió en error alguno al declarar sin lugar la moción del acusado. *El Pueblo* v. *Ramos,* 28 D.P.R. 800; *People* v. *Miller,* 137 Cal. 642.

■ El tercer error se basa en que el veredicto en este caso es contrario a la ley y a la evidencia aportada. De la prueba de la acusación se infiere que alguien penetró en la residencia de Vicente Dumont, puesto que momentos después de haberse sentido un ruido dentro de la casa se encontró descerrajada y abierta una puerta que estaba cerrada. Este hecho, unido a la presencia del acusado en la acera de la calle, aunque no tratase de huir y aguardase la llegada del policía, así como el hallazgo de 94¢ en sus bolsillos, que

uno de los testigos dijo le habían faltado, posiblemente después de conocer con exactitud la cantidad encontrada al acusado, son elementos de prueba y circunstancias que corresponde apreciar al jurado. *People* v. *Minney,* 155 Mich. 534; *Anderson* v. *Commonwealth,* 244 S. W. 315; *People* v. *Flynn,* 73 Cal. 511.

Por estas razones no creemos que estaríamos justificados en resolver este error favorablemente al acusado.

*Debe revocarse la sentencia apelada y concederse un nuevo juicio.*

El Juez Asociado Señor Hutchison, está conforme con la revocación de la sentencia, pero entiende que debe absolverse al acusado.