EL PUEBLO, DEMANDANTE Y APELADO, *v.* BORGES, ACUSADO Y APELANTE.

APELACIÓN procedente de la Corte de Distrito de Humacao en causa por delito de portar armas.

No. 919.—Resuelto en febrero 15, 1916.

PORTAR ARMAS—REVÓLVER—FACULTADES DEL ARRENDATARIO DE UNA FINCA PARA PORTARLA.—El artículo 2 de la ley prohibiendo portar armas, aprobada en 9 de marzo de 1905, tal como quedó enmendado por la Ley de marzo 12, 1908, no prohibe al arrendatario de una finca, cuando está en ella, portar un revólver.

ID.—HOMICIDIO EN DEFENSA PROPIA—ENTREGA DEL ARMA A LA POLICÍA.—El mero hecho de salir el acusado de su finca al camino público para hacer entrega a un policía, a quien había enviado a buscar, de un revólver con el cual había cometido un homicidio en defensa propia, no convierte el acto de portar el arma legalmente en un delito, ni sería culpable tampoco de portar armas prohibidas si, en vez de enviar por la policía, él mismo, directamente, se hubiera dirigido, con su revólver en el bolsillo, hasta el puesto de policía más cercano para informar a las autoridades de lo ocurrido y entregar el arma.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Juan B. Huyke.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON emitió la opinión del tribunal.

Al celebrarse un juicio por homicidio voluntario y aparecer de la prueba un verdadero caso de defensa propia, el acusado y apelante fué absuelto en la Corte de Distrito de Humacao por el jurado a virtud de la instrucción perentoria que le dió la corte a instancia del Fiscal. Con posterio-

ridad a esto fué formulada una acusación, en la que se imputaba el hecho de portar un revólver el acusado quien ahora establece apelación contra la sentencia por la cual fué declarado culpable de este último delito.

Se alega que la corte cometió error, primero, al denegar la moción de haber sido ya expuesto el acusado por el mismo delito, y segundo, al condenar al acusado, puesto que se demostró plenamente por la prueba que el acusado estaba entonces en la finca que tenía arrendada.

Según la consideración que hemos hecho del caso, no es necesario que examinemos el primer fundamento del recurso.

El artículo 2 de la ley prohibiendo portar armas, aprobada en marzo 9, 1905, tal como quedó enmendada por la Ley de marzo 12, 1908, página 45, prescribe lo siguiente:

"Artículo 2.—El artículo precedente no se aplicará a un individuo en servicio activo, como individuos del ejército, ni a un funcionario del orden público, que ejerza autoridad, como juez, fiscal, márshal, submárshal, alguacil de los tribunales insulares o federales a las personas ocupadas en custodiar presos, mientras estuvieren así empleadas; ni a ningún policía ni a ningún agente de rentas internas en el desempeño de sus deberes oficiales, ni prohibe tener o llevar armas a los propietarios, arrendatarios, administradores, mayordomos o celadores de una finca cuando estuviesen en ella o al ir y regresar de la misma, así como dentro de sus casas particulares o edificios que custodiasen o guardasen ni se aplicará a una persona adscrita al servicio militar o naval de los Estados Unidos; ni a personas conductoras de los correos de los Estados Unidos, ni a persona encargada de la custodia de propiedad o fondos insulares o municipales, como celadores o guardias que lleven una autorización por escrito del jefe superior encargado de dicha propiedad o fondo; ni tampoco se aplicará al acto de llevar cortaplumas plegadizos de bolsillo corrientes, que tengan hojas de menos de tres pulgadas de longitud; ni tampoco se aplicará al instrumento denominado machete, cuando se usa o lleva de buena fe por el dueño o poseedor del mismo como requisito indispensable de labor. *Disponiéndose,* que la autorización que por esta ley se concede a los propietarios, arrendatarios, administradores, mayordomos o celadores de fincas agrícolas, para ser efectiva fuera de las mismas, tendrá que ser confirmada a solicitud de los interesados, por el juez municipal respectivo."

Las declaraciones en las cuales se trata de la cuestión promovida en el segundo señalamiento de error, *supra,* son sustancialmente las siguientes:

Juan Ríos Rivera (policía insular) declaró "Que en el mes de diciembre de 1912, el testigo estaba de servicio en el pueblo de Naguabo, y vinieron buscándolo, informándole que había habido un disgusto en el barrio del Río; que el testigo y otro policía, Andino, salieron para el sitio y cuando llegaron a casa de Simplicio Ojeda encontraron a un individuo tendido en el suelo; que el declarante se apeó y preguntó quién había tenido el disgusto y entonces vino Borges y le dijo que había sido él y le entregó un revólver, haciendo una descripción e identificación del mismo; que eso ocurrió en el barrio del Río, en casa de Simplicio Ojeda, del pueblo de Naguabo, en el barrio del Río, en el barrio, en un camino que conduce a Humacao y que el acusado estaba debajo de un árbol de china o de naranja." Repreguntado, dijo: "Que no sabe de quién es la finca esa donde ocurrió el hecho; que no conoce el nombre del dueño; que sabe que vive allí Simplicio Ojeda pero no sabe de quién es la finca; que no sabe de quién es la finca; que no sabe si está arrendada a Marcelino Borges; que no le consta nada de eso; que por ese camino todo el mundo transita, pero la finca por donde Borges estaba, está a la parte abajo y el camino mismo atraviesa la finca por una parte." A preguntas hechas por la corte manifestó: "Que el declarante fué el que ocupó el revólver y se lo ocupó a Marcelino Borges en el camino que conduce de Río Blanco a Humacao, cerca de la casa de Simplicio Ojeda, y que eso fué en el barrio del Río en diciembre de este año pasado." A nuevas preguntas del abogado del acusado, contestó: "Que eso fué al llegar el declarante allí, estaba el muerto así, y él sacó el revólver para entregárselo; que lo sacó del bolsillo."

Juan Valentín declaró: "Que conoce a Marcelino Borges, Jr.; que en el mes de diciembre de 1914, el declarante vió que Tinito Maldonado tenía el revólver y Tinito Borges tenía también uno, y Tinito Maldonado buscaba disgustos con él;

él ha sido el que lo ha buscado, Tinito Maldonado a él, con su arma; que el declarante vió a Marcelino Borges con revólver y que el declarante vió cuando se acercó allí el policía Ríos y Tinito Borges entregó el revólver al policía; que Tinito Borges es Marcelino (indicando al acusado); que cuando Tinito. Borges le entregó el revólver al policía estaba al pie de la casa, en la finca, en el camino, en el camino de ir para el pueblo de Naguabo y de venir para Humacao, en la finca de él; que él vió el revólver pero no sabe de qué clase era; que el testigo sabe que Tinito Maldonado tenía uno y él otro, y Tinito Maldonado fué el que lo buscó en la finca de él; que Tinito Maldonado no fué nada más que buscándolo a él, y por eso fué que pasó lo que pasó, que él salió muerto.'' A preguntas de la corte contestó: Que Tinito Maldonado le tiró primero tres tiros, y él (indicando al acusado) le tiró cuatro y Tinito Maldonado murió en el último.'' Repreguntado contestó: ''Que el acusado se encontraba en la finca, de Marcelino.'' A preguntas de la corte dice ''Que el testigo sabe que esa finca es de él (del acusado) porque es del padre todo aquello y de él también es todo aquello.''

Simplicio Ojeda declara ''Que en diciembre de 1914, el acusado portaba un revólver el cual entregó al policía Juan Ríos; que se le ocupó el revólver en propiedad de Antero Santana; que el Señor Borges le tenía arrendada cuatro cuerdas; que cuando Marcelino Borges le entregó el revólver al policía estaba éste en el mismo callejón frente al camino.'' Repreguntado dijo: ''Que Borges tenía arrendada de esa propiedad cuatro cuerdas, y que el declarante vió que Borges sacó el revólver del bolsillo y se lo entregó al policía; que lo sacó de su bolsillo.''

Marcelino Borges declaró lo siguiente: ''Que el día del asunto de Tinito Maldonado el testigo usó un arma de defensa suya (reconociéndola); que cuando llegó el policía el declarante la entregó a él, sin que se la pidiera; que el declarante se encontraba dentro de un callejón que hay entre una casa de vivienda y una tienda que pertenece a una finca que él tiene

arrendada y cuya finca es de Antero Santana; que el declarante está en posesión de esa finca desde el 31 de diciembre del año pasado, por tres años; que vence el año que viene el contrato; que hicieron un contrato por escrito (identificando el contrato); que dentro de esa finca fué que ocurrieron los hechos, y que el declarante advirtió al policía lo que había pasado en aquel momento; que el declarante mandó a buscar al policía y él mismo le entregó el revólver y le explicó lo que había pasado." Repreguntado por el Fiscal dijo: "Que cuando el policía llegó el testigo le entregó el revólver, y después de haberle entregado el revólver el declarante se fué debajo de un árbol de naranjo; que el policía vino donde estaba él; que el policía vino donde estaba él; que el policía vino por el camino, a caballo, y que el declarante estaba como a dos varas retirado del camino, en el callejón." A preguntas de la defensa contestó: "Que el camino es un camino de la finca que pertenece a la propiedad." A preguntas de la corte dice: "Que en el camino no le ocuparon el arma al testigo, no señor, fuera del camino, en el callejón de las dos casas, de la casa y la tienda, entre medio de las dos casas; que el camino también pertenece a la finca, es camino de la propiedad."

El contrato de arrendamiento también fué presentado como prueba.

Se hace difícil comprender cómo es que en vista de estas declaraciones, que fueron corroboradas por prueba documental pudo el juez sentenciador haber dejado de llegar a la conclusión de que el acusado no se encontraba dentro de su propia finca, tanto en el momento en que ocurrió el disgusto como cuando llegó la policía. Pero sea esto como fuere, el mero hecho, si lo es, de haber salido el acusado de su finca al camino para entregar el arma con la cual había defendido su vida a un representante de la ley no convertiría el acto de portar el arma legalmente en un delito.

No se ha alegado ni tratado de probar, bien por medio de la prueba o en el informe del Fiscal, que el delito por el

cual fué declarado culpable el acusado se cometiera en el momento de ocasionarse la muerte. Por el contrario, el Fiscal con el fin de sostener la sentencia alegando para ello que existen contradicciones en la prueba, insiste en el hecho de que por lo menos en la declaración de un testigo, Juan Valentín, se hace referencia al tiempo en que ocurrió el disparo y no a cuando se hizo la entrega del revólver. No solamente ha sido de tal modo admitido sustancialmente que la muerte tuvo lugar en la finca del acusado, sino que cualquier cuestión que pudiera surgir respecto al hecho de portar el acusado ilegalmente un arma prohibida en ese momento ha quedado completamente descartada.

La prueba no ha sido contradicha en cuanto al hecho de que el acusado, después de dar muerte a un hombre en defensa propia envió inmediatamente por la policía, esperando tranquilamente que llegara al sitio del suceso y que a su llegada prontamente confesó ser el matador y entregó su arma. Este era claramente su deber en vista de las circunstancias y de haber procedido en alguna otra forma se hubiera interpretado esto como una prueba de su culpabilidad. Si en vez de enviar por la policía hubiera seguido él mismo con su revólver en el bolsillo hasta el puesto de policía más cercano para informar a las autoridades de lo que había ocurrido y entregar el arma, no hubiera sido culpable del delito que se le imputó. 8 R. C. L., pág. 288, sec. 309; *Foster* v. *State,* 126 S. W. 1155; *Britton* v. *State,* 124 S. W. 684; *Miles* v. *State,* 108 S. W. 378; *Fitzgerald* v. *State,* 106 S. W. 365.

Debe, por tanto, revocarse la sentencia condenatoria y absolverse al acusado.

> *Revocada la sentencia apelada y absuelto*
> *el acusado.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.

El Juez Asociado Sr. del Toro no intervino en la resolución de este caso.