EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS MEDIAVILLA, conocido por LUIS VILLA, acusado y apelante.

Núm. 7350.—*Sometido:* Febrero 2, 1939. *Resuelto:* Marzo 31, 1939.

*R. Martínez Nadal* y *C. H. Juliá,* abogados del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Luis Mediavilla fué convicto de un delito de portar armas y sentenciado por la Corte de Distrito de Bayamón a sufrir la pena de tres meses de cárcel. Apeló de dicha sentencia y funda su recurso en cuatro errores que imputa a la corte sentenciadora, a saber:

"*Primero:* La sentencia en este caso es contraria a la prueba.

"*Segundo:* La corte inferior cometió error al declarar culpable de la portación de un arma en su propia casa.

"*Tercero:* La corte inferior cometió error al declarar sin lugar la moción de reconsideración presentada en este caso.

"*Cuarto:* Aún cuando la corte inferior hubiese apreciado que el acusado portó el arma fuera de la casa, cometió error al declararle culpable, porque en la acusación se alega que lo portaba en casa de Beatriz Marrero y la prueba que lo coloca fuera, lo hace en su propia finca."

Los errores anteriormente expuestos pueden reducirse a uno, o sea que la sentencia es contraria a la evidencia y a la ley.

A los efectos de discutir los errores anteriormente expuestos, es preciso conocer la acusación, que dice así:

"El Fiscal formula acusación contra Luis Mediavilla, conocido también por Luis Villa, por una infracción al artículo 1 de la Ley Prohibiendo Portar Armas, de junio 25, 1924, *misdemeanor,* cometida como sigue:

"El referido acusado, allá por el día 6 de enero de 1937 y en la casa de Beatriz Marrero, en el barrio Palmarejo de Corozal, que forma parte del Distrito Judicial de Bayamón, Puerto Rico, ilegal y voluntariamente portaba y conducía un revólver, siendo éste un arma con la cual puede causarse daño corporal.

"Este hecho es contrario a la ley para tal caso prevista y a la paz y dignidad de 'El Pueblo de Puerto Rico.' "

Insiste el apelante en que la sentencia es contraria a la ley y a la evidencia porque, según él, el revólver fué portado en la casa de Beatriz Marrero, y resultando de la prueba que aquélla era también su residencia, los hechos probados no son constitutivos de delito. Es verdad que de acuerdo con la prueba practicada Luis Mediavilla vivía con su suegra, Beatriz Marrero, en la casa de ésta, pero también resulta de la declaración del propio acusado que éste, después de disparar el revólver dentro de la casa de Beatriz contra su semejante Juan Cosme, salió de allí portando el revólver y que lo botó en un platanal cercano a la casa de Beatriz.

Alega el acusado que en ningún caso podría ser convicto de portar armas, porque admitiendo que la portó fuera de la casa de Beatriz Marrero, resultaría entonces una incongruencia entre la acusación y la evidencia. En verdad, existe la incongruencia; pero ésta no es material.

En el caso de *Berger* v. *U.S.,* 295 U.S. 78, 79 L. ed. 1314, la Corte Suprema de los Estados Unidos establece la regla con respecto a incongruencias entre la acusación y la prueba en los siguientes términos:

"En *Washington & Georgetown R. Co.* v. *Hickey,* 166 U. S. 521, 531, . . . esta Corte sostuvo que no debe considerarse material una incongruencia cuando la alegación y la prueba corresponden sustancialmente, o cuando la incongruencia no es de tal naturaleza que hubiere podido inducir a error al acusado en el juicio. Es verdad que esto se dijo en un caso civil, pero es aplicable igualmente a un caso criminal si se agrega el requisito de que la incongruencia no sea de tal forma que prive al acusado de su derecho a ser protegido contra otra acusación por el mismo delito." (Casos citados.)

En el caso de autos, la incongruencia no constituyó una sorpresa ni pudo inducir a error al acusado, porque fué él mismo quien declaró que salió de la casa con el arma. Tampoco le priva de alegar con éxito la exposición o convicción anterior (*former jeopardy*), en caso de que fuere acusado nuevamente por el mismo delito, porque los hechos del caso son perfectamente precisos en cuanto al sitio, fecha y oca-

sión en que portó ilegalmente el arma, y fácilmente podría el acusado identificar la transacción por medio de evidencia oral si fuere necesario. *Meyers* v. *U. S.*, 3 F. (2d) (C.C.A.) 379, 380.

De la evidencia no resulta que el platanal donde dice el acusado que tiró el revólver se halle en terrenos del acusado ni tampoco de su suegra Beatriz Marrero. Todo lo que sobre este particular aparece del récord es lo siguiente:

"P. ¿Y el revólver?
"T. Lo boté en medio de la casa de Fernando Santiago y Beatriz Marrero, por un platanal que tenía, un yautial." (R., pág. 54.)

Sabemos por la prueba que el acusado tenía una plantación de tabaco en terrenos de Beatriz Marrero, pero no consta quién era el dueño del terreno donde se hallaba el platanal. Tampoco puede determinarse por el récord con qué propósito salió el acusado de la casa de Beatriz inmediatamente después del crimen. Sólo consta del récord que salió y que echó el revólver en un platanal, pero no puede determinarse en qué momento y ocasión fué que se desprendió del arma, pues el hecho de que la botara en un platanal no implica necesariamente que saliera de la casa con ese propósito y que acto continuo tirase el arma. Pudo haberla botado en cualquier otro momento anterior al juicio.

El caso de *Pueblo* v. *Borges,* 23 D.P.R. 524, no es de aplicación al presente. Allí se probó que el acusado, después de usar un revólver en la realización de un delito, se dirigió al cuartel de la policía con el propósito de entregar el arma. Claramente surgió de la evidencia en aquel caso que el acusado, en los momentos en que le fué ocupada el arma, la portaba con un fin lícito, es decir, entregarla a las autoridades. Pero en este caso, como antes hemos dicho, no surge afirmativamente de la prueba, ni siquiera puede inferirse de la misma, los propósitos que animaban al acusado en los momentos en que salió de la escena del crimen con el arma en cuestión, ni si fué en aquella ocasión que botó el arma.

■ El artículo 1 de la Ley de Portar Armas de 1905 (Comp. 1911, sec. 5994), según quedó enmendado por la vigente Ley núm. 14, de 25 de junio de 1924 (Sesión extraordinaria, pág. 115), literalmente dice así:

"Artículo 1.—Toda persona que ilegalmente portare o condujere cualquier arma o instrumento, con el cual pueda causarse daño corporal, incurrirá en pena de prisión de un mes a seis meses."

La ley antes citada, según fué enmendada por la anteriormente dicha, en su artículo 5 determina a qué casos no serán aplicables las disposiciones de la misma, y el 6 y el 7 declaran quiénes podrán usar armas legalmente. De manera, pues, que aquellas personas que portaren armas y no estuvieren incluídas en las disposiciones de los artículos 5, 6 y 7 de la ley, según quedó enmendada, incurrirán en delito, sin que sea necesario por parte del Pueblo probar la intención con que se portare dicha arma, por ser ésta materia de defensa.

■ Como el acusado, en la fecha en que se cometió el delito, no estaba autorizado para portar armas, ni su caso se halla comprendido en los artículos 5, 6 y 7 de la citada ley, y no apareciendo tampoco de los autos que fuera su caso uno extraordinario, como el de *Pueblo* v. *Borges,* arriba citado, en que de la prueba resultaba que el acusado portaba el arma para fines lícitos en los momentos en que le fué ocupada, preciso es concluir que el arma se portaba ilegalmente y por lo tanto no cometió error alguno la corte sentenciadora al declararle convicto de dicho delito.

*Procede confirmar la sentencia apelada.*

El Juez Asociado Sr. Hutchison disintió. *