El Pueblo de Puerto Rico, demandante y apelado, *v.* Maximino Piazza y Domingo Piazza, acusados y apelantes.

Núm. 9087.—*Sometido:* Mayo 18, 1942. *Resuelto:* Junio 16, 1942.

*Frank Torres, Héctor Ruiz Somohano, R. V. Pérez Marchand, R. Atiles Moréu* y *Raúl Matos,* abogados de los apelantes; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Los acusados fueron convictos por un jurado en la corte de distrito de asesinato en segundo grado y sentenciados a veinte años de presidio. De dicha sentencia han apelado.

Julio Mercado Díaz era empleado por el Fiscal de Distrito de Ponce como un agente privado. Investigaba casos para el Pueblo y declaraba en los juicios contra los acusados en esos casos. En algunos de estos casos estaban envueltos amigos de Maximino Piazza, uno de los acusados en este caso. También investigó casos contra el propio Maximino Piazza, incluyendo una acusación de asesinato por la que el último fué juzgado junto con Ramón Ruiz. En aquel caso Ruiz fué convicto y Maximino Piazza absuelto. Sin embargo, posteriormente Maximino Piazza visitó al fiscal de distrito y le dijo que él era culpable del crimen y que Ruiz en realidad era inocente. Entonces el Fiscal de Distrito ordenó a Mercado que reinvestigara el caso.

En septiembre 19 de 1940, a las 6:30 de la noche, Mercado fué con unos amigos a un restaurante en Ponce, propiedad de Ramón Ruiz. Para aquella época estaba pendiente ante este tribunal una apelación interpuesta por Ruiz en el caso de asesinato. Mercado y sus amigos se dieron unos tragos. Mientras estaban bebiendo llegaron Maximino y Domingo Piazza, los dos hermanos que son los acusados en este caso. Como a las ocho de la noche los amigos de Mercado se fueron. Para aquel momento Mercado ya se había tomado cuatro tragos.

Cuando Mercado finalmente se fué del restaurante a las diez de la noche, estaba en completo estado de embriaguez, sin poder pararse o caminar y literalmente fué sacado del sitio por los hermanos Piazza. Los tres se encaminaron hacia un lugar en Ponce conocido como "El Vigía", donde más tarde se encontró el cadáver de Mercado. Durante el recorrido se encontraron varias personas, quienes fueron testi-

gos en el juicio de este caso. Estas últimas declararon que Mercado estaba "casi muerto" y que los hermanos Piazza lo iban maltratando, permitiendo que se cayera, lo arrastraban y ocasionalmente lo cargaban. Estos testigos afirmaron que los hermanos Piazza parecía que estaban sobrios, y dijeron que llevaban a Mercado a su casa porque estaba "picado".

La prueba reveló que durante este recorrido Mercado tenía una "vaqueta", pero no tenía en ella arma de fuego alguna. Uno de los testigos ayudó a los Piazza a llevar a Mercado al sitio donde se encontró más tarde su cadáver. Declaró que cuando él se retiraba Domingo Piazza le disparó un tiro a Mercado, que estaba acostado en el suelo, con el revólver que se identificó en el juicio como perteneciente a Mercado. También declaró que Maximino Piazza, después de decirle a Domingo "vamos a rematarlo, antes de que nos vaya a culpar", cogió el revólver y disparó dos tiros más contra Mercado.

Cuando se descubrió al otro día el cadáver de Mercado, se encontraron cerca de él dos balas que de acuerdo con el testimonio pericial habían sido disparadas por su propio revólver. También se encontró cerca del cadáver su cartera, que estaba vacía, y en los bolsillos una citación dirigida a los fiadores de Maximino Piazza en un caso criminal que estaba pendiente contra éste, para que expusieren las razones que tuvieren por las cuales no se les debía confiscar su fianza.

Los hermanos Piazza, que vivían cerca del sitio donde ocurrió el crimen, fueron interrogados, entre otros, por el fiscal de distrito cuando éste llegó al sitio del crimen al día siguiente. Al principio los hermanos Piazza negaron toda conexión con la muerte, pero cuando el fiscal de distrito empezó a interrogar al testigo que había presenciado los disparos, Maximino Piazza interrumpió al fiscal de distrito y le dijo que no investigara más, que su hermano Domingo era el hombre que había dado muerte a Mercado. Entonces Ma-

ximino le ordenó a Domingo que fuera a su casa y le trajera al fiscal de distrito el revólver con el cual había dado muerte a Mercado. Domingo fué a su casa y trajo el revólver de Mercado.

Los acusados alegaron que ellos y Mercado se habían emborrachado juntos y que llevaban a Mercado a la casa de Maximino para que le pasara la borrachera; que de momento Mercado se alborotó y exigía que se le dijese hacia dónde lo llevaban; que Mercado le dió una patada a Domingo y le golpeó en el pecho con el cabo de su revólver, el cual llevaba entre el cinturón de sus pantalones y la camisa; que en la lucha que surgió Domingo le arrebató el arma de fuego a Mercado; que cuando Mercado le agarró la muñeca, Domingo disparó un tiro en defensa de su vida, continuando los disparos después que Mercado cayó al suelo; que Maximino Piazza no solamente no tomó parte en la pelea, si que trató infructuosamente de evitar que Domingo disparara a Mercado.

Los acusados alegan que la corte de distrito cometió error al permitir prueba de que el interfecto había estado investigando otros supuestos crímenes de Maximino Piazza. La regla de que otros actos de mala conducta del acusado no pueden ser introducidos en evidencia en un caso criminal está sujeta a algunas excepciones. Underhill's *Criminal Evidence*, cuarta edición, sección 184, pág. 337, indica que " . . . puede demostrarse que la víctima de un homicidio, por el cual el acusado está siendo juzgado, era un oficial de la policía u otra persona quien al momento de ser matado, estaba investigando las circunstancias de otro delito anterior e independiente del cual se sospechaba del acusado." Wharton's *Criminal Evidence*, undécima edición, vol. I, sección 345, pág. 490, establece la regla como sigue: "En ciertas clases de casos, ofensas colaterales pueden demostrarse para probar los procesos mentales o la actitud mental del acusado. Esto incluye cinco cosas diferentes: (1) Motivo—como la

comisión del delito imputado para suprimir evidencia de algún otro delito; . . . ''. Recientemente hemos estudiado en toda su extensión este asunto en *Pueblo* v. *González*, 57 D.P.R. 744.

La prueba en cuanto a que Mercado estaba investigando para el fiscal los supuestos delitos de Maximino Piazza era de suma importancia para demostrar el motivo para la comisión del delito aquí imputado a los hermanos Piazza. No hubo error al permitir esta prueba. La corte *motu proprio* cuidadosamente limitó esta prueba al instruir al jurado al momento de su presentación que la considerara en cuanto al alegado motivo, y para ningún otro propósito.

Lo que hemos dicho dispone igualmente del error señalado al admitir como *exhibit* la citación a los fiadores de Maximino Piazza para que expusieren las razones que tuvieren por las cuales no se les debía confiscar su fianza en un caso criminal pendiente contra Maximino Piazza. En verdad, el hecho de que esta citación se encontrara en la persona del interfecto era en sí mismo altamente significativo.

La declaración del fiscal de distrito en cuanto al caso de asesinato en el que se absolvió a Maximino Piazza y se declaró culpable a Ramón Ruiz también era admisible como tendiente a demostrar el motivo en este caso. El fiscal de distrito había declarado anteriormente, sin contradicción, que después del juicio en aquel caso Maximino Piazza había venido a verle y le había dicho que él era culpable en vez de serlo Ruiz. Claramente era el deber del fiscal de distrito reinvestigar el caso para evitar una posible injusticia. El hecho de que el fiscal de distrito le confiara esta investigación a Mercado era sin lugar a dudas de importancia en cuanto a establecer el motivo de los hermanos Piazza en el caso de autos.

La acusación alega que, ''actuando de común acuerdo y en concierto'', los dos acusados dieron muerte a Mercado. Sigue alegando la acusación que Maximino Piazza acometió

y agredió al interfecto en diversas partes del cuerpo con una barra de hierro, y que el acusado Domingo Piazza le hizo varios disparos de revólver en la cabeza.

Maximino Piazza señala error por el fundamento de que en cuanto a él existe una incongruencia fatal. Alega que no hubo prueba de la cual pudiera concluir el jurado que él había participado en la muerte del interfecto, golpeándole con una barra de hierro. Considera que al dejar la prueba de ajustarse a la acusación, esto justifica su absolución. Véanse *Berger* v. *United States,* 295 U. S. 78, 82; *Pueblo* v. *Mediavilla,* 54 D.P.R. 583, 585.

Sin embargo, hubo prueba de que tanto Maximino como Domingo Piazza le hicieron disparos al interfecto. Como hemos visto, también hubo otra prueba que demostraba una conducta por ambos acusados que culminó en la muerte de Mercado. De todo el récord el jurado pudo muy bien concluir que los dos acusados, "actuando de común acuerdo y en concierto," dieron muerte a Mercado. En tal caso la alegación en cuanto al empleo de la barra de hierro estaba de más (*surplusage*) y así debe ser tratada. Sería por lo tanto inmaterial cuál de los acusados en realidad hizo uso del arma que causó la muerte a Mercado. Sección 36, Código Penal, ed. 1937; *Pueblo* v. *Vélez et al.,* 32 D.P.R. 382.

Además, hubo testimonio médico de que algunas de las heridas infligidas al interfecto pudieron causarse con una barra de hierro. Y en un registro efectuado en la casa de Maximino poco después del crimen se encontró una barra de hierro propiedad de éste, y en el juicio se introdujo en evidencia. Por tanto, el jurado estuvo justificado al concluir bajo este testimonio que Maximino participó en la muerte de la manera alegada en la acusación.

■■ No hubo error en la manera en que la corte de distrito trató las declaraciones juradas de los acusados tomadas por el fiscal de distrito el día después de la muerte. Los acusados se quejan de que no se le exigió al fiscal de distrito

que estableciera como materia preliminar la naturaleza voluntaria de estas declaraciones. Pero es que estas declaraciones nunca se ofrecieron en evidencia. Meramente se identificaron por el taquígrafo del fiscal de distrito y la corte hizo constar con suficiente claridad que ellas no estaban en evidencia. En verdad, el récord demuestra que nunca se convirtieron en "exhibits" que fueron considerados por el jurado.

Más aún, las declaraciones estaban de acuerdo con la teoría adelantada por los acusados en el juicio, y sustancialmente reiteraban la posición asumida por Domingo Piazza en su declaración: a saber, que Domingo había dado muerte al interfecto en defensa propia y que Máximino no participó en la muerte en manera alguna. No constituyendo una confesión, el carácter voluntario de tal declaración no tiene que ser probado antes de ser admitida. *Pueblo* v. *Dones,* 56 D. P.R. 211, 220.

■ De igual manera no hallamos error en la forma en que el fiscal de distrito utilizó la declaración jurada de Domingo Piazza al contrainterrogarlo. Él había declarado que el interfecto le había dado una patada y le había golpeado en el pecho con el cabo de su revólver antes de que disparara a Mercado. El fiscal de distrito tenía derecho a impugnar su credibilidad demostrando en el contrainterrogatorio que él había omitido hacer estas manifestaciones cuando prestó su declaración jurada ante el fiscal de distrito. En verdad no hubo objeción por parte de la defensa mientras el fiscal de distrito practicaba el contrainterrogatorio.

■ Los acusados se quejan de la negativa de la corte de distrito a permitir que el jefe de la policía de Ponce declarara que el interfecto nunca tuvo registrada un arma de fuego. Aún asumiendo que la defensa hubiera puesto en "issue" la mala reputación del interfecto en forma apropiada y hubiera alegado que tal reputación era conocida por los acusados, esto no se podía probar por supuestos actos

específicos de mala conducta o violaciones de ley. Underr hill's *Criminal Evidence*, cuarta edición, sección 562, páginas 1111-16; *Pueblo* v. *Ramírez*, 37 D.P.R. 87, 96, 97. La corte no cometió error al excluir tal declaración.

■ Los acusados señalan también como errores la negativa de la corte de distrito en dos ocasiones a declarar con lugar mociones de *mistrial* basadas en los comentarios del fiscal de distrito en su informe final al jurado. En una ocasión el fiscal de distrito argumentaba que la cartera perteneciente al interfecto contenía algún dinero cuando él salió del restaurante, pero que había sido encontrada vacía en el lugar del crimen. La defensa argumentó que no había evidencia en cuanto a que la cartera contenía dinero alguno antes de la muerte. No obstante, hubo prueba al efecto de que Mercado había pagado la cuenta del licor que se consumió antes de salir del restaurante y no es una inferencia enteramente irrazonable que le sobrase algún dinero cuando él y los acusados se retiraron. De cualquier modo la corte subsanó cualquier posible error instruyendo al jurado que no había tal evidencia, y de que el jurado debía ignorar el comentario del fiscal de distrito sobre esta cuestión, y debían borrarlo de sus mentes.

La segunda moción surgió cuando el fiscal de distrito argumentó que los acusados deliberadamente habían emborrachado al interfecto. Creemos que hubo suficiente prueba de la cual se podía llegar a esta inferencia. También aquí la corte fué excepcionalmente liberal al subsanar cualquier posible error instruyendo al jurado que en el récord no había tal evidencia y que hicieran caso omiso de los comentarios del fiscal de distrito.

■ Cuando el secretario de la corte leyó originalmente el veredicto en voz alta, éste leía como sigue: "Nosotros, los señores del Jurado, declaramos al acusado Maximino Piazza y Domingo Piazza . . . del delito de asesinato en segundo grado.". Toda vez que el jurado había omitido insertar en

su veredicto escrito la palabra "culpables" o las palabras "no culpables", la corte les ordenó que regresaran al salón del jurado para que corrigieran su veredicto. Poco tiempo después, el jurado regresó a la corte y rindió su veredicto, el cual había sido completado insertando la palabra "culpables" en el espacio en blanco.

La corte preguntó al jurado si éste era el veredicto de cada uno de ellos, y el abogado de la defensa preguntó a cada uno de los jurados si ése había sido su veredicto. La corte entonces preguntó si el veredicto rendido había sido el veredicto del jurado tanto antes como después de haber sido corregido. A estas preguntas se contestó en la afirmativa. En respuesta a preguntas del abogado de los acusados uno de los jurados explicó que simplemente había ocurrido una omisión en la inserción de la palabra "culpables" al escribir el veredicto, de lo cual se dieron cuenta por primera vez cuando el secretario en corte abierta leyó el veredicto en alta voz.

La corte denegó correctamente una moción de mistrial por el fundamento de que el veredicto rendido era nulo. Fué una explicación plausible la de que la palabra "culpables" se había omitido inadvertidamente. Si el jurado hubiera tenido en mente rendir un veredicto de no culpable, claramente no hubiera insertado en su veredicto las palabras "en segundo grado". En este caso todavía no se había disuelto el jurado cuando se descubrió el error. La corte actuó correctamente al ordenar al jurado, que estaba todavía bajo su control, que reanudara sus deliberaciones y corrigiera su veredicto. Las autoridades claramente sostienen este punto de vista. Sección 288, Código de Enjuiciamiento Criminal, ed. 1935; *Pueblo* v. *Dones,* 56 D.P.R. 211, 223, 224; *Pueblo* v. *López,* 39 D.P.R. 766, 767; *People* v. *Jenkins,* 56 Calif. 4; *Marable* v. *State,* 157 So. 861 (Ala.).

Los errores restantes no merecen seria consideración. Los acusados alegan que el jurado cometió error al negarse

a darle crédito a su teoría de defensa propia. El récord está repleto de declaraciones que justifican un veredicto de asesinato en primer grado. El jurado prefirió dar crédito a los testigos del Pueblo, y quizás fué indebidamente indulgente al rendir un veredicto de asesinato en segundo grado.

 El error general de que las instrucciones fueron erróneas, incompletas y confusas (*misleading*) está enteramente falto de base. Los acusados no se quejan de ninguna instrucción en particular. Como cuestión de hecho, durante el juicio sólo tomaron una excepción general a las instrucciones en total. Hemos resuelto repetidamente que tal excepción no protege ningún supuesto error en apelación. No obstante hemos considerado todas las instrucciones y llegado a la conclusión de que la corte instruyó al jurado de manera amplia, correcta e imparcial.

Los acusados se quejan de que la corte de distrito abusó de su discreción al sentenciarlos a veinte años de presidio. Bajo todas las circunstancias creemos que la corte inferior estaba enteramente justificada al imponer esta sentencia.

*La sentencia de la corte de distrito será confirmada.*